E-FILED
Monday, 07 November, 2022  12:58:41 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **JAMES R. COLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 20-3309** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, United States District Judge:**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Defendant's denial of Plaintiff James R. Cole's claim for disability insurance benefits and supplemental security income. Before the Court are the Plaintiff's Motion for Summary Judgment [d/e 11] and the Defendant's Motion for Summary Affirmance [d/e 14]. Because the Administrative Law Judge's findings are supported by substantial evidence, the Court will deny the Plaintiff's motion and grant the Defendant's motion.

1

**BACKGROUND**

The Plaintiff filed his disability claim on June 18, 2018, alleging he became disabled on September 30, 2016.  R. 242. The claim was denied initially and on reconsideration. R. 124, 160.  After a hearing, the Administrative Law Judge (ALJ) denied the Plaintiff's claim on January 31, 2020, at which time Plaintiff was 52-years old.  R. 12-42.  The ALJ found that while Plaintiff's severe impairments included arthritis in the bilateral knees, emphysema, limited vision in the right eye, obesity, depressive/bipolar disorders, and anxiety/obsessive-compulsive disorders, none of those severe impairments or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. R. 18-20.   The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a range of light work that existed in significant numbers in the national economy.  R. 20-36.  The ALJ stated that Plaintiff was limited to occasional climbing of ramps, stairs, and ladders and no climbing of ropes and scaffolds.  R. 20. The Plaintiff was limited to occasional kneeling, crouching, and crawling.  R. 20-21.  The ALJ further found that, while looking straight ahead, the Plaintiff was limited to seeing 45 degrees to the

2

right with normal peripheral vision to the left.  R. 21.  Moreover, the Plaintiff needed to avoid concentrated exposure to extreme cold, fumes, odors, dusts, and gases.  R. 21.

The ALJ further found that Plaintiff was limited to jobs that only require "up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multistep, self-evident tasks, easily resumed after momentary distraction," and "jobs that do not require more than occasional work-related interaction with the public, co-workers and supervisors."  R. 21.

The ALJ found that the medical evidence "does not demonstrate clearly that he has the significantly limited range of motion, muscle atrophy, motor weakness, difficulty ambulating, or reflex abnormalities that are associated with intense and disabling pain."  R. 31.  He found no indication that Plaintiff "requires consistent use of an assistive device."  R. 31.  The ALJ stated that providers noted a normal gait at times and, though crepitus was often noted, "the claimant generally had full knee range of motion and little else to objectively support  the claimant's complaints of disabling pain."  R. 31.  The Plaintiff's imaging showed only mild osteoarthritis.  R. 31.

3

The ALJ further noted that Plaintiff had very conservative and sporadic mental health treatment but did not follow through on prescribed treatment.  R. 31.  He noted that Plaintiff participated in an inpatient program at the crisis center, but declined to go back when it was recommended a second time.  R. 31.  The ALJ stated, "The claimant's failure to follow up as recommended and appropriately adhere to prescribed treatment further suggests the claimant's symptoms were not as troublesome as alleged and contrasts with the current claim of ongoing disabling symptoms since the alleged onset date."  R. 31.

The ALJ found that the opinions of the state agency consultants that Plaintiff was restricted to light work with limitations were "generally persuasive," though more recent evidence and testimony demonstrated additional "mild limitations in understanding and memory, as well as in adaptive functioning."  R. 33.

At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  R. 34.  At step five, the ALJ found Plaintiff capable of performing light jobs such as storage rental clerk, office helper, and mail clerk, which existed in significant numbers in the

4

national economy.  R. 36.  Therefore, the ALJ denied the claim.  R. 37.

The Appeals Council denied Plaintiff's request for review on September 22, 2020, thereby rendering it the agency's final decision for purposes of judicial review.  See 20 C.F.R. §§ 404.955, 981.

## DISCUSSION

In asserting error, the Plaintiff first alleges the ALJ failed to account for all mental impairments, leading to clear error at step 5.  See d/e 12, at 15-18.  The Plaintiff also claims the ALJ erred in assessing the nature and limiting effects of Plaintiff's knee impairment, which resulted in error in the ALJ assigning a "light" RFC.  Id. at 18-20.    The Defendant alleges the ALJ properly considered the prior administrative medical findings in assessing the Plaintiff's mental RFC.  See d/e 14-1, at 12-14.  Additionally, the Defendant asserts the ALJ fully considered limitations related to Plaintiff's knees.  Id. at 7-12.

### Legal standard

The Plaintiff has the burden of proving he is disabled.  See Prill v. Kijakazi, 23 F.4th 738, 746 (7th Cir. 2022) (citing 20 C.F.R. §

404.1512(a)).    The Act specifies that "the findings of the
Commissioner of Social Security as to any fact, if supported by
substantial evidence, shall be conclusive."    42 U.S.C. § 405(g).
"Substantial evidence" is defined as "such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion."
*Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014) (citations omitted).
Although the task of a court is not to re-weigh evidence or substitute
its judgment for that of the ALJ, the ALJ's decision "must provide
enough discussion for [the Court] to afford [the Plaintiff] meaningful
judicial review and assess the validity of the agency's ultimate
conclusion." *Id.* at 856-57.  The ALJ "must build a logical bridge from
the evidence to his conclusion, but he need not provide a complete
written evaluation of every piece of testimony and evidence." *Schmidt
v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and
quotation marks omitted).    A court does not "resolve conflicts or
decide questions of credibility."  L.D.R. v. Berryhill, 920 F.3d 1146,
1151 (7th Cir. 2019).

### **ALJ's RFC regarding mental impairments**

The Plaintiff first claims the ALJ's assessment of mental RFC—
that Plaintiff could perform jobs with "up to detailed but uninvolved

6

tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multi-step, self-evident tasks, easily resumed after momentary distraction," and jobs that did not require more than "occasional work-related interaction with the public, coworkers, and supervisors"—is inconsistent with Dr. Low's and Dr. Rozenfeld's opinions that Plaintiff could carry out simple "one and two step" instructions, and could have no contact with the general public, and "reduced contact" with supervisors.  See d/e 12, at 15.  The Plaintiff contends that the ALJ does not explain his deviation from what he described as the "generally persuasive" opinions of Dr. Low and Dr. Rozenfeld in formulating the ALJ's mental RFC.  Id. at 16-17.

The Plaintiff notes that despite finding Dr. Low's opinion "generally persuasive," the ALJ assessed an RFC finding that Plaintiff can perform jobs with "detailed but uninvolved tasks, with few concrete variables" and "jobs with multi-step" tasks.  Id. at 15-16. The Plaintiff alleges none of the jobs the ALJ found that Plaintiff could perform has a reasoning level of one, or SVP 1.  Id. at 16.  The rental clerk job has a reasoning level of 3 and an SVP 4—it is actually a skilled job according to the Dictionary of Occupational Titles ("DOT").

Id. at 16-17.  The ALJ stated it was SVP 2.  R. 36.  According to DOT, office helper and cafeteria helper are both SVP 2 and Reasoning 2. Id. at 17.  The Plaintiff contends that the ALJ fails to explain the conflict between his RFC finding and the opinions of Dr. Low and Dr. Rozenfeld.  Id.  Absent some articulation and citation to medical evidence supporting the Plaintiff's RFC, the ALJ runs the risk of engaging in the impermissible practice of "playing doctor."  See Mandrell v. Kijakazi, 25 F.4th 514, 518 (7th Cir. 2022).  While an ALJ need not address every piece of evidence, the ALJ cannot ignore a line of evidence that supports a finding of disability.  See Deborah M. v. Saul, 994 F.3d 785, 788 (7th Cir. 2021).

As the Defendant states, the ALJ found the limitations assessed by Dr. Low and Dr. Rozenfeld to be "generally persuasive," which does not mean that the ALJ intended to adopt all of the limitations of state agency psychological consultants Drs. Low and Rozenfeld.  See d/e 14-1, at 12.  The ALJ notes that the "state agency consultants did not have the benefit of reviewing the full medical record or assessing the statements of the claimant at the hearing."  R. 33.  Moreover, the RFC reflects the most that an individual can do.  See  20 C.F.R §§ 404.1545(a), 416.945(a).    However, Dr. Low and Dr. Rozenfeld

8

specifically stated that Plaintiff "can follow at least simple 1 and 2 step directions." R. 105, 120, 139, 156. Accordingly, even if the ALJ had found Dr. Low's and Dr. Rozenfeld's conclusions fully persuasive instead of "generally persuasive," a limitation consistent with those findings would not have been appropriate for inclusion within an assessment that reflects the most the Plaintiff can do.

The Plaintiff has pointed to no evidence that supports Plaintiff's assertion that he was actually limited to performing tasks with one or two-step directions or to no interaction with the public. Because Dr. Low and Dr. Rozenfeld found that Plaintiff could perform at least simple one and two-step directions, the ALJ's finding that Plaintiff has the RFC to do more than that could be supported by the record. In finding that Plaintiff was capable of occasional interaction with people, the ALJ cited the Plaintiff's own statements alleging he could get along with other people, shop in stores, use public transportation, deal appropriately with authority, and live with other people. R. 32, 290, 293, 295-96. As for whether the Plaintiff was limited to tasks with one or two-step directions, the ALJ cited activities performed by Plaintiff that were inconsistent with such a finding—including working as a tow truck driver, working on cars, handling money,

driving, and performing some household chores. R. 23, 32. Additionally, the Plaintiff reported that his work as a tow truck driver in 2017 included writing reports and using technical knowledge or skills. R. 335.

It was the ALJ's role to assess the Plaintiff's RFC upon considering all of the evidence in the case record. See 20 C.F.R. §§ 404.1545-46, 416.945-46. An ALJ considers medical opinions along with other evidence in determining a claimant's RFC. See 20 C.F.R. §§ 404.1545, 416.945. The Court concludes that the above evidence supports the ALJ's finding as to the Plaintiff's mental RFC. The Plaintiff points to nothing in the record, including the findings of Dr. Low and Dr. Rozenfeld, which requires the ALJ to find additional mental limitations. The Plaintiff cites no evidence that the ALJ misinterpreted or misunderstood. Accordingly, the Court concludes that the ALJ's assessment of Plaintiff's mental RFC—that Plaintiff could perform jobs with "up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multi-step, self-evident tasks, easily resumed after momentary distraction," and jobs that did not "require more

than occasional work-related interaction with the public, coworkers, and supervisors," <u>see</u> R. 20, is supported by substantial evidence.

### **<u>ALJ's assessment of Plaintiff's knee impairment and RFC</u>**

The Plaintiff first takes issue with the ALJ's use of boilerplate language.  <u>See</u> d/e 12, at 18.  In assessing the nature and limiting effects of Plaintiff's impairments, the ALJ states "the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."   R. 22.   The Seventh Circuit has repeatedly criticized this or similar language by the ALJ as "meaningless boilerplate."  <u>See</u> <u>Arnett v. Astrue</u>, 676 F.3d 586, 592 (7th Cir. 2012); <u>Bjornson v. Astrue</u>, 671 F.3d 640, 644-46 (7th Cir. 2012); <u>Martinez v. Astrue</u>, 630 F.3d 693, 694 (7th Cir. 2011). However, courts will uphold the ALJ's credibility determination if the ALJ provides specific reasons for discrediting a claimant's testimony. <u>See</u> <u>Filus v. Astrue</u>, 694 F.3d 863, 868 (7th Cir. 2012).  As discussed

below, the Court concludes the ALJ adequately supports his findings regarding the Plaintiff's symptoms.

The Defendant claims that the ALJ identified arthritis in both knees as a severe medically determinable impairment and proceeded to evaluate the medical evidence, prior administrative findings, and Plaintiff's knee-related complaints at length and Plaintiff has not shown that the evidence required additional limitations beyond those already identified.  See d/e 14, at 8.

The Plaintiff next claims that the ALJ recites the medical evidence at length, but with little analysis.  See d/e 12, at 18.  In discussing the Plaintiff's right knee, the ALJ cited an emergency room visit and an x-ray which the ALJ stated "showed mild superior patellar pole spurring," R. 22, and a subsequent visit later for bilateral knee pain, with radiographic imaging showing "tricompartmental arthritis" in the right knee.  R. 24.

The Plaintiff further claims that the November 2017 x-ray showed additional limitations which the ALJ glossed over, including "meniscal calcification/chondrocalcinosis in both the lateral and medial compartments, increased compared to prior. Tricompartmental osteoarthritis with associated joint space

12

narrowing . . . Enthesophyte of the superior patella. . ." See d/e 12, at 18-19, citing R. 427. The ALJ noted that a May 2018 x-ray showed "tricompartmental osteoarthritis with interval increase and meniscal calcification and chondrocalcinosis." R. 27.

The Defendant states that the ALJ noted Plaintiff's complaints, physical examination findings, imaging results, and treatment from each of his three emergency room visits for knee pain between June 2017 and May 2018. See d/e 14, at 8. Moreover, the ALJ's Decision includes a summary of the radiologist's findings of x-ray studies performed at each visit. Id. citing R. 22, 24, 27.

The Plaintiff notes that the ALJ rejected Plaintiff's descriptions of his limitations concerning standing and walking, stating that the records did not show he required "consistent use" of a cane even though one had been prescribed for Plaintiff. See d/e 12, at 19. The ALJ found that although crepitus was often noted, there were records describing a "normal gait" and that Plaintiff "generally had full range of motion and little else to objectively support" his "complaints of disabling pain." Id., citing R. 31. Even after the Plaintiff was prescribed a cane in March 2019, Plaintiff was seen ambulating normally without a cane in March 2019 and in September 2019. R.

31.  To establish a medical requirement for a cane, a claimant must provide "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed."  Social Security Ruling 96-9p, 1996 WL 374185, at *7 (July 2, 1996).  The ALJ stated "there is no indication that the claimant requires consistent use of an assistive device."  R. 31.  The Court concludes the ALJ reasonably determined that a prescription for a cane alone, when the record includes numerous findings of normal gait, was insufficient to establish medical need.

The Plaintiff objects to the ALJ's interpretation of the imaging as showing "only mild osteoarthritis."  See d/e 12, at 19.  The Plaintiff claims the ALJ based his assessments of Plaintiff's ability to stand and walk on that factor.  Id.  The ALJ did note the Plaintiff's sporadic complaints of knee pain to his primary provider Nurse Peters, in addition to Nurse Peters' observations that Plaintiff had crepitation of both knees but still ambulated with a normal gait.  R. 25, 27-28, 30.  Moreover, the ALJ noted consultative examiner Dr. Chapa's findings indicated Plaintiff could walk without assistance but had difficulty walking on his heels and toes and had stable knee joints

14

despite some limited range of motion.  R. 27.  The ALJ also noted that Plaintiff reported improvement of knee pain following injections in November 2018.  R. 28-29.  In noting "only mild osteoarthritis," the ALJ is reiterating the imaging results reviewed by treating physician Dr. Jeong in March 2019.  R. 30-31, 615.

The Plaintiff contends that it was not merely pain; it was his inability to stand for over 20 minutes, or walk farther than a block, caused by both his knee problems and breathing, which limited Plaintiff.  See d/e 12, at 19.  While the degree of severity in the Plaintiff's left knee was described by radiologists as "mild," the same cannot be said for the right knee.  Id.  The Plaintiff alleges it is tricompartmental and progressive; it is also accompanied by meniscal degeneration, chondrocalcinosis, and enthesophytes—additional painful conditions that can reasonably be expected to produce impaired walking and standing.  Id.  These conditions are separate and additional to the Plaintiff's osteoarthritis and, according to Plaintiff, were not considered by the ALJ, who also failed to acknowledge the progression documented by the objective radiographic evidence.  Id. at 19-20.  The Plaintiff claims that the ALJ found Plaintiff's ability to stand and walk to be "unimpaired."  Id. at

20.  However, the ALJ concluded some limitations were appropriate, finding that Plaintiff could stand and walk consistent with light exertional activity, which allowed for standing or walking, off an on, for a total of approximately six hours of an eight-hour workday.  R. 20; Social Security Ruling 83-10, 1983 WL 31251, at *5-6 (1983). Additionally, while the ALJ noted that imaging established the existence of Plaintiff's impairment, it was appropriate for the ALJ to rely on factors such as normal examination findings, conservative and sporadic treatment, and ongoing work activity.

The Plaintiff further argues the fact that objective evidence disclosed the existence of conditions the ALJ glossed over and mischaracterized as "mild" suggests that he did not understand the significance of chondrocalcinosis and enthesophytes, additional forms of arthritis that can produce debilitating symptoms, some of which fluctuate in intensity. Id. at 20.  The Plaintiff claims this error undermines the ALJ's assessment of Plaintiff's unimpaired ability to stand or walk.  Id.  Chondrocalcinosis often acts like gout and osteoarthritis and, according to Plaintiff, can explain Plaintiff's inability to walk or stand without the prescribed cane at some times, but not others.  Id.  The ALJ noted that Plaintiffs' sports medicine

16

physician assessed Plaintiff as needing a 4-prong cane.  R.31.  The Plaintiff notes that SSR16-3p requires consideration of all impairments in assessing consistency of a claimant's statements, and does not allow the ALJ to consider only those that are consistent. See d/e 12, at 20.

The ALJ reasonably determined that the opinions of the state agency consultants were "generally persuasive."  R. 33.  Dr. Kareti and Dr. Madala found that Plaintiff was limited to light exertional activity with additional postural restrictions.  R. 102-03, 117-18, 135-37, 152-53.  The Defendant notes that Plaintiff did not object to the ALJ's consideration of these administrative findings and Plaintiff provided no opinions from his own treating providers.  See d/e 14, at 9-10.  In concluding that Plaintiff could stand and walk in a manner consistent with light exertional activity, both Dr. Kareti and Dr. Madala reviewed the November 2017 and May 2018 imaging reports of the Plaintiff's knees.  R. 119, 137-38.  The Court finds no error in the ALJ's reliance on these physicians' interpretations of the imaging reports given that Plaintiff points to no other expert opinions on the issue.

The ALJ determined that Plaintiff's knee impairment was not as limiting as he alleged.  R. 31.  Pursuant to the applicable regulations, an ALJ evaluating a claimant's alleged symptoms examines possible conflicts between the claimant's statements and the rest of the evidence, including the objective medical evidence, treatment history, and activities of daily living.  20 C.F.R. §§ 404.1529, 416.929.  The ALJ's Decision includes a thorough evaluation of the Plaintiff's symptoms related to his knees.  The ALJ documented the Plaintiff's physical examination findings noted throughout the period and concluded that, except for findings of crepitus, there was "little else to objectively support the claimants' complaints of disabling pain." R. 31.  The ALJ noted the Plaintiff's conservative treatment history did not support his claim, and Plaintiff acknowledged injections improved his pain.  R. 29, 31.  Moreover, the Plaintiff pursued no other treatment such as physical therapy, treatment at a pain clinic, or consultation with a surgeon.  R. 31.  The ALJ also noted the Plaintiff's daily activities were not consistent with disabling pain.  R. 31-32.  Such activities included bicycling for transportation, moving tree limbs, and working as a tow truck driver.  R. 23, 31-32.  The Plaintiff worked as tow truck driver, which required him to lift up to

18

100 pounds, for 28 to 60 hours each week between June and August 2017, which was almost one year after Plaintiff's alleged onset date. R. 18, 266, 335, 469, 472, 511.  The ALJ noted that Plaintiff provided multiple and inconsistent reasons regarding why that employment ended.  R. 31.  During his hearing, the Plaintiff testified that while he alleged his disability began in September 2016, Plaintiff did not become unable to work until soon after he started drawing unemployment benefits in 2018.  R. 51, 53.  The Court concludes that the ALJ reasonably relied on this evidence in determining the effect of Plaintiff's impairments on functioning.

The ALJ considered the testimony of the vocational expert and found that Plaintiff could perform work that existed in significant numbers in the national economy even if Plaintiff was further limited to standing and/or walking for a total of four hours during an eight-hour work-day.  R. 36.  The ALJ identified jobs that allowed individuals the option to sit or stand.  R. 36.

Based on the foregoing, the ALJ adequately considered the Plaintiff's symptoms and limitations associated with Plaintiff's knees. The Plaintiff has not shown that the ALJ erred or that the evidence demanded a finding of greater restrictions than those assessed by the

ALJ. The Court concludes that the ALJ's findings concerning the Plaintiff's knees are supported by substantial evidence.

Based on the foregoing, the Court concludes that the ALJ's Decision is supported by substantial evidence.

For the reasons stated herein, Plaintiff James R. Cole's Motion for Summary Judgment [d/e 11] is DENIED.

Defendant Commissioner of Social Security's Motion for Summary Affirmance [d/e 14] is GRANTED.

The Commissioner's Decision is Affirmed.

The Clerk will enter Judgment and terminate this case.

ENTER: November 4, 2022

FOR THE COURT:

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT COURT